## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| L.S. as mother and natural guardian of D.S., a minor, | : | No. 3:22cv234 |
| | : | |
| Plaintiff | : | (Judge Munley) |
| | : | |
| v. | : | |
| | : | |
| HANOVER AREA SCHOOL DISTRICT, | : | |
| NATHAN BARRETT, DAPHNE PUGH, | : | |
| JESSICA RAMAGLI, and MARY | : | |
| FARRELL, | : | |
| Defendants | : | |

·············································································································

### MEMORANDUM

Before the court is a motion to dismiss plaintiff's complaint filed by

Defendants Hanover Area School District, Nathan Barrett, Daphne Pugh, Jessica

Ramagli, and Mary Farrell.  Having been fully briefed, this matter is ripe for

disposition.[1]

---

[1] On November 7, 2023, the Honorable Robert D. Mariani transferred this case to the undersigned.  Previously, on September 7, 2022, Judge Mariani approved a stipulation permitting plaintiff to file an amended complaint. (Doc. 31).  The stipulation allowed plaintiff to file an amended complaint to assert a vicarious liability claim against Defendant Kelly Services, USA, LLC ("Kelly"). (Doc. 30).  The stipulation also provided, in part, "the present briefing on defendants' pending motions to dismiss will remain and be decided by the Court in due course without the need for further briefing." (Id.)  On October 5, 2023, Defendants Kelly and Alicia Schlauch were dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). (Doc. 59).  For the purposes of plaintiff's claims against the remaining defendants, the allegations of the complaint and the amended complaint are the same, absent averments related to Defendant Schlauch, who has since been dismissed. (Compare Doc. 1, ¶ 10 to Doc. 32, ¶¶ 10-10b, see also Doc. 30-1).  Additionally, per the amended complaint, plaintiff no longer seeks punitive damages against Defendant Hanover Area. (Doc. 32, ad damnum clause).  Based on the parties' stipulation, this memorandum will address the

**Background**

Plaintiff L.S. brings this action as the result of an alleged sexual assault involving her daughter, D.S., which occurred at the Lyndwood Learning Center in Hanover Township, Pennsylvania on November 22, 2021.[2]  (Doc. 1, Complaint) That day, plaintiff arrived early to pick up D.S. from prekindergarten and watched her play on the school playground with her classmates. (Id. ¶¶ 4, 11).  D.S. was three years old. (Id.)

Defendant Ramagli, D.S.'s teacher, was supposed to be supervising the children on the playground along with another teacher, Defendant Farrell, and two other teacher's aides. (Id. ¶ 12).  Plaintiff alleges that Defendants Ramagli and Farrell and one of the other teacher's aides, however, were not supervising the children. (Id. ¶ 13).  Rather, these individuals stood in the middle of the playground laughing and looking at their phones. (Id.)

Two boys from D.S.'s class were chasing D.S. on the playground. (Id. ¶ 14).  The two boys then pushed D.S. in the chest, which caused D.S. to fall on her back. (Id.)  D.S. kicked at the boys and fought her way back up from the

---

allegations against the moving defendants in both the original complaint and the amended complaint with references to the original.

[2] These background facts are derived from plaintiff's complaint.  At this stage of the proceedings, we must accept all factual allegations in the complaint as true.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  The court makes no determination, however, as to the ultimate veracity of these assertions.

ground. (Id.)  Plaintiff observed D.S. adjust her pants as she stood up to run away. (Id.).

D.S. then ran up a slide. (Id. ¶ 15).  The same two boys followed D.S. and pulled at her legs. (Id.)  D.S. continued up the slide and again adjusted her pants. (Id.)  D.S. then got off the slide. (Id. at 16).  The same two boys pushed D.S. to the ground again. (Id.)  One of the boys sat on D.S.'s back and pressed her face into the mulch. (Id.)  The other boy then pulled down D.S.'s pants and underwear. (Id.)  That boy grabbed and separated D.S.'s buttocks and began shoving mulch into her rectum.  (Id.)

Plaintiff avers that Defendants Ramagli and Farrell failed to notice what was happening. (Id. ¶ 17).  Plaintiff, however, saw the incident unfold. (Id. ¶ 18)  She screamed for help and ran toward her child. (Id.)  Another teacher's aide ran to D.S. from a different part of the playground and pulled the boys off. (Id.).  That aide brushed the mulch off D.S. and pulled up her pants and underwear. (Id.)

By this time, the screaming and loud activity alerted Defendants Ramagli and Farrell. (Id. ¶ 19).  After being informed by a teacher's aide about what transpired, Defendant Farrell stated that the incident would need to be reported.

(Id.)  Per plaintiff, the incident was never reported to ChildLine[3] by the defendants or anyone at Hanover Area as was required by Pennsylvania law. (Id. ¶ 38).

Back inside the family vehicle, plaintiff called Defendant Pugh, the director of the prekindergarten program, to report the incident. (Id. ¶¶ 7, 20).  Defendant Pugh advised plaintiff that she would call Defendant Barrett, the superintendent of Hanover Area. (Id. ¶ 20).  Plaintiff then brought D.S. to the emergency room, and, after discharge, to the Hanover Township Police Department to inquire about filing a police report. (Id. ¶¶ 21-22).  Plaintiff also brought D.S. to the Victim's Resource Center ("VRC"). (Id. ¶ 22).  At home, D.S. repeatedly wet her pants and cried, asking her mother why the boys did that to her. (Id. ¶ 23).

D.S. did not return to school the next day or any time thereafter. (Id. ¶¶ 23, 42).  On November 24, 2021, having heard nothing from Defendant Barrett, Defendant Pugh, or Hanover Area's designated Title IX coordinator, plaintiff contacted Pugh requesting that the two boys be transferred out of D.S.'s class and placed in the other class for their grade level. (Id. ¶¶ 24-27).  Pugh told plaintiff that the school would not accommodate that request. (Id. ¶ 28).  Rather, Pugh offered to move D.S. out of her class or move one of the boys out of the class. (Id.)

---

[3] ChildLine is a unit of the Pennsylvania Department of Human Services, which operates a toll-free system of receiving reports of child abuse as established through Pennsylvania's Child Protective Services Law ("CPSL"). See 23 PA. CONS. STAT. § 6332, 55 PA. CODE § 3490.4.

On December 8, 2021, Defendant Ramagli, D.S.'s teacher, contacted plaintiff to ask if D.S. would be returning to school. (Id. ¶ 33).  Plaintiff alleges that Ramagli did not inquire about any accommodations D.S. might need to return to school. (Id.)  The next day, another teacher's aide at the school contacted plaintiff. (Id. ¶ 34).  The aide relayed to plaintiff that one of the boys involved in the alleged assault of D.S was sexually touching the aide's own daughter. (Id.)  Plaintiff avers that she told the aide to report the incident to Defendant Ramagli or Defendant Pugh. (Id.)  Per plaintiff, the aide later confirmed that she reported the separate incident involving her daughter. (Id. ¶ 35).

On December 15, 2021, Defendant Pugh e-mailed plaintiff to ask if D.S. would return to school and indicated she required an answer by December 17. (Id. ¶ 36).  Plaintiff alleges that Pugh did not inquire about any accommodations D.S. might need to return to school. (Id.)  Further, plaintiff responded that D.S. was terrified to return to school without a guarantee that she would not be around the boys who assaulted her. (Id. ¶ 37).  Plaintiff also communicated that Hanover Area's proposal to move D.S. out of her class was unacceptable. (Id.) Pugh made no response. (Id.)

Plaintiff then emailed Defendant Superintendent Barrett, who she alleges had not yet contacted her by that time. (Id. ¶ 38).  Plaintiff advised Barrett in the email that D.S. was diagnosed with sexual trauma and was receiving counseling

services at the VRC. (Id.)  Plaintiff also communicated to Barrett that Defendant

Pugh refused to transfer both boys out of D.S.'s class. (Id.) Plaintiff further

relayed information from the VRC that a ChildLine report was not made by

anyone at the district regarding the assault. (Id.) She wrote to Barrett: "my

daughter was the victim, she would love to come back but she should not be

punished for this." (Id.)

On December 16, 2021, Barrett telephoned plaintiff, but she missed the

call. (Id. ¶ 39).  Because it was after school hours when plaintiff noticed the

missed call, plaintiff then emailed Barrett stating she would like to discuss

accommodations with Barrett and Pugh for D.S. to return to school and provided

times when plaintiff would be available to discuss further. (Id.)  Five days later, on

December 21, 2021, Barrett and Defendant Pugh contacted plaintiff by phone for

the first time together. (Id. ¶ 40).  One month had passed since the assault. (Id.)

According to plaintiff:

> During the call, both Barrett and Pugh doubled down and
> reiterated that they were denying D.S.'s needed
> accommodations. Barrett and Pugh told L.S. that they had
> implemented a new "safety plan" which included
> designating spots on the playground for employees to
> supervise students. Pugh described the sexual assault of
> D.S. as "horseplay" that the new safety plan would prevent
> from happening again. Pugh also told L.S. that how the kids
> "play with mulch" would be monitored moving forward.
> Barrett asked L.S. to have "faith" in the new safety plan.

(Id.)

6

After the call, plaintiff sent an email to Defendant Barrett and Defendant Pugh confirming the contents of the previous conversation. (Id. ¶ 41).  On December 23, 2021, Barrett replied by email, indicating that plaintiff's "absolute request will not be able to be accommodated." (Id.).

On February 17, 2022, plaintiff filed a five-count complaint against the defendants. (Doc. 1).  Count One alleges Defendant Hanover Area was deliberately indifferent to a report of sexual assault or harassment of D.S. in violation of Title IX the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.* ("Title IX"). (Id. ¶¶ 43-49).  Count Two alleges Defendant Hanover Area retaliated against D.S. in violation of Title IX.[4]  (Id. ¶¶ 50-53). Count Three asserts a negligence claim against Defendants Hanover Area, Farrell, and Ramagli. (Id. ¶¶ 54-59).  Count Four raises a claim under 42 U.S.C. § 1983 ("Section 1983") against Defendants Hanover Area, Barrett, and Pugh for allegedly violating D.S.'s equal protection rights under the Fourteenth Amendment. (Id. ¶¶ 60-69).  Count Five raises a separate Section 1983 claim asserting that Defendant Hanover Area failed to train its employees to prevent,

---

[4] As an initial matter, defendants argue that plaintiff's Title IX claims against Defendants Barrett and Pugh should be dismissed because those claims are not cognizable against individuals. (Doc. 16 at 9).  Plaintiff does not contest this point and agrees that Title IX claims against Barrett and Pugh should be dismissed. (Doc. 23 at 4, n. 2). The court will thus dismiss the Title IX claims as asserted against Barrett and Pugh.

recognize, and appropriately respond to sexual harassment and sexual assault in violation of D.S.'s due process and equal protection rights.  (Id. ¶¶ 70-76).

Defendants subsequently filed a motion to dismiss all counts in plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Having been extensively briefed, the issues raised in the motion to dismiss are ripe for disposition.

**Jurisdiction**

Based on the alleged violations of federal law, this court has jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  Additionally, the court has jurisdiction under 28 U.S.C. § 1343(a)(3), which confers jurisdiction of any action commenced to redress the deprivation of any right, privilege, or immunity secured by federal law providing for the equal rights of citizens.  The court has supplemental jurisdiction over plaintiff's state law negligence claims pursuant to 28 U.S.C. § 1367(a). ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

**Legal Standard**

Defendant filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when factual content is pled that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id. (citing Twombly, 550 U.S. at 570).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

On a motion to dismiss for failure to state a claim, district courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. See Phillips, 515 F.3d at 233 (citations omitted).

**Analysis**

Defendants move to dismiss all of plaintiff's causes of action, which include four separate claims under Title IX and Section 1983 and a state law claim for negligence. The court will address each claim in the order set forth by plaintiff in her complaint.

### 1. Plaintiff's Title IX Deliberate Indifference Claim

Count One of plaintiff's complaint asserts a Title IX deliberate indifference claim against Defendant Hanover Area.  Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).  More simply stated, "Title IX prohibits sex discrimination by recipients of federal education funding." Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173 (2005).

Title IX implies a private right of action to enforce its prohibition on intentional sex discrimination that authorizes private parties to seek money damages for intentional violations of Title IX. Id.  This private right of action encompasses intentional sex discrimination based on a federal fund recipient's deliberate indifference to sexual harassment of a student by another student. Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Ed., 526 U.S. 629, 642 (1999)("Davis").

To prevail on a Title IX deliberate indifference claim, plaintiff must show: 1) the defendant received federal funds; 2) sexual harassment occurred; 3) the defendant exercised substantial control over the harasser and the context in which the harassment occurred; 4) the defendant had actual knowledge of the harassment; 5) that defendant was deliberately indifferent to the harassment; and 6) the harassment was so severe, pervasive, and objectively offensive that it deprived her daughter of her access to the educational opportunities or benefits provided by the school. See Hall v. Millersville Univ., 22 F.4th 397, 408 (3d Cir. 2022); Davis, 526 U.S. at 645–50.

Defendant Hanover Area argues that the complaint fails to state a claim regarding three of the above elements: 1) whether sexual harassment occurred; 2) whether the harassment was so severe, pervasive, and objectively offensive that it deprived D.S. of access to educational opportunities or benefits; and 3) that defendant was deliberately indifferent to the harassment.  The court addresses Defendant Hanover Area's arguments *seriatim*.

### a.  Whether Sexual Harassment Occurred

The first element challenged in the motion to dismiss is whether plaintiff has pled facts that sexual harassment occurred.  Defendant Hanover Area argues that plaintiff failed to allege facts that the incident was sexual in nature. For example, the school focuses on the age of D.S.'s alleged assailants and

11

argues that they could not be biologically capable of acting with sexual impulses or desires.  Rather, per Hanover Area, plaintiff has only set forth facts that this incident was playground bullying.  In applying the law to the facts alleged by plaintiff at this stage of the litigation, the court disagrees.

Congress has authorized federal departments and agencies to promulgate rules and regulations to enforce the objectives of Title IX.  Davis, 526 U.S. at 638–39 (citing 20 U.S.C. §§ 1681, 1682).  United States Department of Education regulations now define "sexual harassment" to include "sexual assault" as outlined in 20 U.S.C. § 1092(f)(6)(A)(v), the Clery Act. See 34 C.F.R. § 106.30(a) (2020).  Per that statute, "sexual assault" is "an offense classified as a forcible or nonforcible sex offense under the uniform crime reporting [("UCR")] system of the Federal Bureau of Investigation [("FBI")]." 20 U.S.C. § 1092(f)(6)(A)(v).  The FBI's UCR program defines "sex offenses" as "[o]ffenses against chastity, common decency, morals, and the like."[5]  This definition excludes "rape."  "Rape" is separately defined as: "The penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person, without the consent of the victim."

---

[5] See United States Department of Justice, Federal Bureau of Investigation, Criminal Justice Information Services Division, Crime in the United States (2019), Offense Definitions, https://ucr.fbi.gov/crime-in-the-u.s/2019/crime-in-the-u.s.-2019/topic-pages/offense-definitions, last accessed May 9, 2024.

The FBI's UCR system collects crime data from the states.  The FBI's definition of "sex offenses" and "rape" fit various enumerated crimes under the Pennsylvania Crimes Code.  For example, under Pennsylvania law, a person commits the first-degree felony of involuntary sexual deviate intercourse ("ISDI") when that person engages in deviate sexual intercourse with a complainant by forcible compulsion. 18 PA. CONS. STAT. § 3123(a)(1). "Deviate sexual intercourse" is further defined by the Crimes Code, in relevant part as "[s]exual intercourse per os or per anus between human beings. . .The term also includes penetration, however slight, of the genitals or anus of another person with a foreign object for any purpose other than good faith medical, hygienic or law enforcement procedures." 18 PA. CONS. STAT. § 3101.

Plaintiff alleges here that two boys knocked down D.S. on the school playground.  The complaint further alleges that one child sat on her daughter's back while the other pulled down her pants, spread her buttocks, and shoved mulch into her rectum.  The facts, as alleged, thus meet the definition of "sexual assault" under the Title IX regulations.

The definitions set forth above also do not explicitly require that the alleged perpetrator of a sexual assault be charged with a crime for an institution to be subject to Title IX liability as defendants contend.  Moreover, under Pennsylvania law, sexual assault allegations in an elementary school setting would subject a

13

child perpetrator to the jurisdiction of state court Juvenile Act proceedings, not criminal prosecutions, but only then after the alleged perpetrator reached a certain age. See 42 PA. CONS. STAT. § 6301, *et seq.*  Under the Juvenile Act, a child cannot be adjudicated delinquent until they reach ten years of age and children cannot be charged as adults for alleged sex crimes until they reach the age of fifteen.  42 PA. CONS. STAT. § 6302 (setting forth the definition of "delinquent child" and excluding certain crimes after age fifteen from the definition of "delinquent act"). [6]  In light of the Juvenile Act, defendants' reading of the Title IX regulations and the Clery Act definitions would foreclose any Title IX student-on-student sexual assault claim against a Pennsylvania recipient school where the alleged perpetrator was under the age of fifteen.  This argument is not compelling.

Furthermore, defendants' arguments about age, capacity, and intent are not capable of resolution because they are really arguments about the facts and on a motion to dismiss, the court cannot resolve factual disputes.  Rather, the court must construe the complaint in the light most favorable to the plaintiff. Although D.S. and the purported assailants are very young, the alleged assault

---

[6] In its arguments about capacity, Defendant Hanover Area references only the common law defense of infancy without reference to the juvenile justice system as established in Pennsylvania through the Juvenile Act.  The common law infancy defense, to the extent it deals with capacity, is irrelevant to a determination of whether a juvenile's conduct amounts to an act of delinquency under the Juvenile Act.  In Int. of G.T., 597 A.2d 638, 641 (1991).

involved two boys against one girl.  A reasonable inference may thus be made from the allegations that the incident occurred on the basis of sex.  Moreover, Hanover Area's arguments related to the ability of prekindergartners to act with sexual impulses also fall short at this stage when the facts in the complaint indicate that the boys who targeted D.S. on the playground were acting in a sexual manner.  Plaintiff witnessed the incident and considered the incident to be sexual in nature.  As alleged, Defendant Farrell understood that the matter was of such nature that it needed to be reported to ChildLine.  The court is limited to the facts as pled in plaintiff's complaint and she has advanced allegations placing this incident within the definition of "sexual assault," which in turn, meets the definition of "sexual harassment" as set forth in the Title IX regulations.[7]

### b. Whether the Harassment was so Severe, Pervasive, and Objectively Offensive that it Deprived D.S. of Her Access to the Educational Opportunities or Benefits Provided by the School

A Title IX action for peer harassment "will lie only for harassment that is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit."  Davis, 526 U.S. at 633.

---

[7] Defendant also asserts that the allegations do not meet another articulated regulatory definition of "sexual harassment," that is, "[u]nwelcome conduct determined by a reasonable person to be so severe, pervasive, and objectively offensive that it effectively denies a person equal access to the recipient's education program or activity."  34 C.F.R. § 106.30.  Having determined that the facts alleged meet the definition of "sexual assault," the court need not reach whether the conduct alleged meets any other definition of "sexual harassment."

Defendant Hanover Area contends that the facts alleged do not establish that the harassment was "severe, pervasive, and objectively offensive," or that D.S. was denied an educational opportunity or benefit.  Plaintiff, however, has pled enough facts to support this element.

Davis guides the court in determining whether plaintiff has stated a plausible Title IX deliberate indifference claim in her complaint:

> Whether gender-oriented conduct rises to the level of actionable "harassment" thus "depends on a constellation of surrounding circumstances, expectations, and relationships," Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 82, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998), including, but not limited to, the ages of the harasser and the victim and the number of individuals involved, see OCR Title IX Guidelines 12041–12042.
>
> Courts, moreover, must bear in mind that schools are unlike the adult workplace and that children may regularly interact in a manner that would be unacceptable among adults. See, e.g., Brief for National School Boards Association et al. as Amici Curiae 11 (describing "dizzying array of immature ... behaviors by students").
>
> Indeed, at least early on, students are still learning how to interact appropriately with their peers. It is thus understandable that, in the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it.
>
> Damages are not available for simple acts of teasing and name-calling among school children, however, even where these comments target differences in gender. Rather, in the context of student-on-student harassment, damages are available only where the behavior is so severe,

16

> pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect.

526 U.S. at 651–52.

Davis makes clear that there are "very real limitations on a funding recipient's liability under Title IX." Id. at 652.  For example, it is not enough that a student has been teased or called offensive names even if it causes that child to refuse to attend school or causes a drop in their grades. Id.  In response to the dissenting opinion, Davis also contains skepticism that a single instance of peer-on-peer harassment would be serious enough to systemically deny a victim equal access to education, but the majority did not explicitly draw a line based on age or require that there be more than one incident of harassment.[8]  Id. at 652-53.

As pled, this matter does not involve mere insults, banter, or teasing. Rather, plaintiff has alleged that sexual assault occurred.  This fact alone

---

[8] As noted in this memorandum, under Department of Education regulations, one instance of sexual assault qualifies as sexual harassment for the purposes of Title IX.  See 34 C.F.R. § 106.30(a)(3); 20 U.S.C. § 1092(f)(6)(A)(v)(defining "sexual assault" as "**an** offense" classified as a forcible or nonforcible sex offense under the FBI's UCR system).

Additionally, the Department of Education's expanded regulatory definition of "sexual harassment" to include "sexual assault" was put in place through notice and comment procedures finding footing in "the Supreme Court's observation in Davis that a single instance of sufficiently severe harassment on the basis of sex may have the systemic effect of denying the victim equal access to an education program or activity." See Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed. Reg. 30026-01, n. 92 (citing Davis, 526 U.S. at 652–53 (noting that with respect to "severe, gender-based mistreatment" even "a single instance of sufficiently severe one-on-one peer harassment could be said to" have "the systemic effect of denying the victim equal access to an educational program or activity.")).

distinguishes the cases cited by Defendant Hanover Area to support its argument

that the harassment was not "pervasive." (Doc. 16, Br. in Supp. at 14-15).  For

example, in Moeck v. Pleasant Valley Sch. Dist., the district court granted

summary judgment on a Title IX claim where female members of a high school

wrestling team were subjected to fewer than ten sexually tinged comments over

the course of two-to-three years by their male coaches. 179 F. Supp. 3d 442,

447-48 (M.D. Pa. 2016).  Under the facts of that case, the court noted that such

sporadic incidents were not sufficiently pervasive where these comments did not

specifically address the plaintiff in a sexual manner, and she was not otherwise

physically touched in a sexual way.  Id. at 448–49.  Here, plaintiff has averred a

patently different set of facts involving objectively offensive physical touching

where even a named defendant remarked as to its seriousness. (See Doc. 1,

Complaint, ¶ 19).

　　　Plaintiff has also averred that another parent, a teacher's aide at the

school, relayed to plaintiff within a few weeks of the incident that one of the boys

had engaged in the repeated sexual touching of the daughter of that teacher's

aide.  Per plaintiff, that teacher's aide ultimately also reported these incidents to

the school. (Id. ¶¶ 34-35).  The specifics of these incidents are not detailed in the

complaint, but plaintiff has pled other events concerning one of the boys involved

in D.S.'s assault to be explored by the parties in discovery.

Additionally, to recover under Title IX, "severe, pervasive, and objectively offensive conduct" must also undermine and detract from the victims' educational experience, such that the victim-students are effectively denied equal access to an institution's resources and opportunities. See Davis, 526 U.S. at 651 (citing Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)).  Hanover Area contends that D.S. was not denied an educational opportunity or benefit under the facts pled, focusing on plaintiff's "unilateral" decision to withdraw D.S. from school after being presented with accommodations for D.S.'s return.

Plaintiff, however, has pled sufficient facts to support a theory that D.S. was denied equal access to educational opportunities and benefits.  Plaintiff alleges hospital treatment and emotional harm, specifically that, after the event, "D.S. repeatedly wet her pants and cried, asking her mother why the boys did that to her." (Doc. 1, Complaint, ¶ 23).  Additionally, the VRC diagnosed D.S. with sexual trauma and provided counseling. (Id. ¶ 38).  In response to this event, the Defendants Barrett and Pugh allegedly proposed two options to plaintiff: 1) move D.S. out of her established classroom; or 2) only move one of the boys from D.S.'s classroom.  (Id. ¶ 28).  The first option would require D.S. to move out of her familiar and otherwise valued educational environment.  The second option would require D.S. to remain in class with one of the alleged wrongdoers.

19

Furthermore, Hanover Area's proposed safety plan, as described in the complaint, does not appear to preclude contact between D.S. and the boys on the playground. (Id. ¶ 40).  Rather Defendant Pugh, the prekindergarten director, advised plaintiff that "horseplay" would be prevented and "how the kids 'play with mulch' would be monitored moving forward." Id.  In contrast to Defendant Pugh's alleged characterization of the event, plaintiff witnessed and responded to the alleged incident as it was occurring on the playground and believed it was a sexual assault.  (Id. ¶¶ 11-19, 44-49).  As a result, plaintiff's Title IX claim includes allegations that Hanover Area never acknowledged the incident as sexual in nature. (Id. ¶ 47c).  The parties take clearly divergent views of what occurred.  At this stage, plaintiff's allegations are accepted as true.  These allegations set forth deficiencies in Barrett and Pugh's proposed classroom placement alternatives and playground safety plan after a sexual assault.  Under this view of the facts, D.S.'s failure to return to school does not warrant dismissal of the Title IX claim.

### c. Whether Plaintiff Has Alleged Deliberate Indifference

The next element to consider is whether plaintiff has alleged deliberate indifference by Defendant Hanover Area to the harassment.  Defendant Hanover Area asserts that "deliberate indifference incorporates a causation requirement." (Doc. 16, Br. in Supp. at 19 (citing Swanger v. Warrior Run Sch. Dist., 346 F.

Supp. 3d 689 (M.D. Pa. 2018)). That is, Defendant Hanover Area asserts that its alleged deliberate indifference must have caused the harassment for the district to be liable. The Third Circuit disagrees. See Hall 22 F.4th at 409 (determining that "[t]he causation requirement mentioned in Swanger is nothing more than a restatement of the Supreme Court's holding in Davis.").

Under the law, plaintiff does not have to assert that Hanover Area's deliberate indifference caused D.S. to be assaulted. Rather, the measuring stick for deliberate indifference after an assault is "where the [school's] **response** to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.' " Davis, 526 U.S. at 648 (emphasis added).

As further explained in Davis:

> both the "deliberate indifference" standard and the language of Title IX narrowly circumscribe the set of parties whose known acts of sexual harassment can **trigger some duty to respond** on the part of funding recipients. Deliberate indifference makes sense as a theory of direct liability under Title IX only where the funding recipient has some control over the alleged harassment. A recipient cannot be directly liable for its indifference where it lacks the authority **to take remedial action.**

526 U.S. at 644 (emphasis added).

Davis thus contemplates that a school can be deliberately indifferent based on its response to sexual harassment by responding or attempting to remediate in a "clearly unreasonable" manner.

21

Furthermore, Department of Education regulations provide the framework of a funding recipient's required response. The basic mandate of Title IX is to "respond promptly" when having actual knowledge of sexual harassment "in a manner that is not deliberately indifferent." 34 C.F.R. § 106.44(a) (2020). "Actual knowledge" means, in part, "notice of sexual harassment or allegations of sexual harassment to a recipient's Title IX Coordinator or **any official** of the recipient who has authority to institute corrective measures on behalf of the recipient, or to **any employee** of an elementary and secondary school." 34 C.F.R. § 106.30(a) (2020) (emphasis added). Moreover, "a school district acts with deliberate indifference when it downplays students' reports of sexual harassment, such as by categorizing reported sexual harassment as less serious misconduct." Doe v. N. Penn Sch. Dist., 636 F. Supp. 3d 519, 531 (E.D. Pa. 2022) (citing Doe v. Pennridge Sch. Dist., 413 F. Supp. 3d 393, 411 (E.D. Pa. 2019).

The recipient's response under Title IX:

> must treat complainants and respondents equitably by offering supportive measures as defined in § 106.30 to a complainant, and by following a grievance process that complies with § 106.45 before the imposition of any disciplinary sanctions or other actions that are not supportive measures as defined in § 106.30, against a respondent.
>
> The Title IX Coordinator must promptly contact the complainant to discuss the availability of supportive

> measures as defined in § 106.30, consider the
> complainant's wishes with respect to supportive measures,
> inform the complainant of the availability of supportive
> measures with or without the filing of a formal complaint,
> and explain to the complainant the process for filing a
> formal complaint.

34 C.F.R. § 106.44(a) (2020) (formatting modified).[9]

Supportive measures are further defined in the Title IX regulations as restoring or preserving "equal access to the recipient's education program or activity without unreasonably burdening the other party, including measures designed to protect the safety of all parties or the recipient's educational environment, or deter sexual harassment." 34 C.F.R. § 106.30 (2020). "The Title IX Coordinator is responsible for coordinating the effective implementation of supportive measures." Id. Supportive measures must also be offered where no formal complaint has been filed and may include "mutual restrictions on contact between the parties." 34 C.F.R. § 106.30 (2020); 34 C.F.R. § 106.44 (2020).

As alleged, Barrett and Pugh failed to offer supportive measures preserving D.S.'s equal access to her education and prioritized the education of the alleged male perpetrators. As further alleged, Hanover Area's Title IX coordinator never

---

[9] Title IX regulations require the designation of a Title IX coordinator to coordinate a recipient's efforts to comply with regulatory responsibilities. 34 C.F.R. § 106.8(a) (2020). "Any person may report sex discrimination, including sexual harassment (whether or not the person reporting is the person alleged to be the victim of conduct that could constitute sex discrimination or sexual harassment), in person, by mail, by telephone, or by electronic mail, using the contact information listed for the Title IX Coordinator, or by any other means that results in the Title IX Coordinator receiving the person's verbal or written report." Id.

contacted plaintiff.  A reasonable inference could be made from these allegations that Barrett and Pugh did not bring plaintiff's complaint to the attention of the Title IX coordinator in violation of the regulations.

As also detailed above, plaintiff alleged she was presented with two options by Hanover Area for D.S. to return to school post-assault and both were "clearly unreasonable" in her view.  While plaintiff does not have "a Title IX right to make particular remedial demands[,]" see Davis, 526 U.S. at 648, the question remains whether Hanover Area's remedial responses were "clearly unreasonable" to amount to deliberate indifference.  That question cannot be resolved on a motion to dismiss when the factual universe is limited to plaintiff's complaint. In light of the above, plaintiff has plausibly alleged a Title IX deliberate indifference cause of action against Hanover Area.  Defendants' motion to dismiss Count One of plaintiff's complaint will be denied.

## 2. Plaintiff's Title IX Retaliation Claims

Count Two of plaintiff's complaint asserts a Title IX retaliation claim against Hanover Area.  Hanover Area also moves to dismiss this claim.  "Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action."  Jackson, 544 U.S. at 173.  To establish a *prima facie* case of retaliation in violation of Title IX, a plaintiff must show: (1) that she engaged in

protected activity; (2) she suffered an adverse action; and (3) there was a causal connection between the two.  Doe v. Mercy Catholic Med. Ctr., 850 F.3d 545, 564 (3d Cir. 2017)(citing Moore v. City of Philadelphia, 461 F.3d 331, 340–42 (3d Cir. 2006)).

Conceding the first element, Defendant Hanover Area argues that plaintiff fails to allege the second element, an adverse action.  "Under a Title IX retaliation claim, adverse action must be 'materially adverse' such that it 'might well have dissuaded a reasonable [person in the plaintiff's position] from making or supporting a charge of discrimination.' "  Ploeger v. Tr. of Univ. of Pa., 653 F.Supp.3d 188, 196 (E.D. Pa. 2023)(quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68–70 (2006)).  Assuming the facts of the complaint to be true, D.S. suffered materially adverse action based on the parties' reactions and responses to what took place on the playground: she was caused to stop attending prekindergarten.  On a motion to dismiss, the court can only consider the plaintiff's factual position.  A reasonable parent in plaintiff's shoes would have been dissuaded from making a charge of sex-based discrimination on behalf of her child if it would cause her child to have to leave school based on school officials' conduct following the report.

Hanover Area also argues that plaintiff fails to allege a causal connection between the protected activity and the adverse action.  Generally, a causal link

may be established by: 1) demonstrating inconsistent explanations for taking adverse action; 2) a pattern of antagonism; or 3) temporal proximity unusually suggestive of retaliatory motive.  Carvalho-Grevious v. Delaware State Univ., 851 F.3d 249, 260 (3d Cir. 2017)(citing Waddell v. Small Tube Prods., Inc., 799 F.2d 69, 73 (3d Cir. 1986); Woodson v. Scott Paper Co., 109 F.3d 913, 921 (3d Cir. 1997); Shaner v. Synthes, 204 F.3d 494, 505 (3d Cir. 2000)).  Where the temporal proximity is not so close as to be unduly suggestive, timing plus other evidence may be an appropriate test for causation. Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003) (quoting Estate of Smith v. Marasco, 318 F.3d 497, 513 (3d Cir. 2003)).

Plaintiff alleges the adverse action, "constructive expulsion," was discernible three days after she reported the incident to the school when Defendant Pugh advised plaintiff that the school would not transfer both boys out of D.S.'s classroom and D.S. would either need to change classrooms herself or remain in class with one of the boys.  Further communication only confirmed Hanover Area's initial response.  Accordingly, based on this timing and the additional facts pled in plaintiff's complaint, defendants' motion to dismiss plaintiff's Title IX retaliation claim in Count Two will be denied.

26

### 3. Plaintiff's Negligence Claims

Turning next to Count Three, plaintiff alleges that Defendants Ramagli, Farrell, and Hanover Area were negligent by failing to properly supervise the students on the playground, which caused the sexual assault. (Doc. 1 ¶¶ 55-57). Plaintiff also avers that Hanover Area is vicariously liable for the negligence of Defendants Ramagli and Farrell, the prekindergarten teachers, who were alleged to be on their phones instead of supervising the playground during the incident. (Id. ¶¶ 17, 58).

Defendants contend that they are immune from these tort claims under Pennsylvania law. The court will address Defendant Hanover Area's immunity arguments before turning to considerations applicable to Defendants Ramagli and Farrell.

### a. Defendant Hanover Area

Local agencies and governments such as school districts are generally immune from tort liability under Pennsylvania's Political Subdivision Tort Claims Act, 42 PA. CONS. STAT. § 8541, *et seq.* ("PSTCA"). See Wells v. Harrisburg Area Sch. Dist., 884 A.2d 946, 948 (Pa. Commw. Ct. 2005). Section 8542 of the PSTCA describes exceptions to that immunity under certain circumstances. See Zauflik v. Pennsbury Sch. Dist., 104 A.3d 1096, 1100 (Pa. 2014). Five years ago, the PSTCA was amended to include a sexual abuse exception at 42 PA.

27

C<small>ONS</small>. S<small>TAT</small>. § 8542(b)(9). <u>See</u> Act of Nov. 26, 2019, P.L. 641, 2019 Pa. Legis.

Serv. Act 2019-87 (H.B. 962), Section 7 (West).

Relative to the sexual abuse exception, Section 8542 now provides:

> (a) **Liability imposed.** -- A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):
>
> > (1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and
> >
> > (2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.
>
> (b) **Acts which may impose liability.** -- The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency: . . .
>
> > *(9)* *Sexual abuse.* -- Conduct which constitutes an offense enumerated under [42 P<small>A</small>. C<small>ONS</small>. S<small>TAT</small>. §] 5551(7) (relating to no limitation applicable) if the injuries to the plaintiff were caused by actions or omissions of the local agency which constitute negligence.

42 P<small>A</small>. C<small>ONS</small>. S<small>TAT</small>. § 8542(a)-(b), (b)(9).

28

The sexual abuse exception cross-references nine (9) specific sex offenses where there is no statute of limitations for prosecution when the victim is under eighteen (18) years of age.  See 42 PA. CONS. STAT. § 5551(7).  Accordingly, for the sexual abuse exception to governmental immunity to apply, the victim must be under eighteen (18) years of age at the time of the alleged sexual assault. Jean v. City of Philadelphia, 604 F.Supp.3d 271, 275 (E.D. Pa. 2022); City of Philadelphia v. J.S., 1272 C.D. 2021, 2023 WL 8827104, at *3 (Pa. Commw. Ct. Dec. 21, 2023)(non-precedential), app. granted, No. 7 EAL 2024, 2024 WL 1505127 (Pa. Apr. 8, 2024) ("By its plain terms, Section 8542(b)(9) of the Tort Claims Act specifically incorporates the provisions of Section 5551(7) of the Judicial Code and, by its plain terms, Section 5551(7) is specifically limited to crimes involving a "victim [who] was under eighteen years of age at the time of the offense.").[10]

In the absence of decisions from the Pennsylvania Supreme Court interpreting Section 8542(b)(9), federal courts have applied the sexual abuse exception in different manners on motions to dismiss.  For example, in this

---

[10] On April 8, 2024, the Pennsylvania Supreme Court granted a petition for allowance of appeal in J.S. to address: "Whether the Commonwealth Court incorrectly concluded that the Sexual Abuse Exception to the Local Political Subdivision Tort Claims Act (42 Pa.C.S. § 8542(b)(9)) is only applicable to plaintiffs who were minors at the time they were victimized?" 2024 WL 1505127 at *1.

29

district, Judge Conner determined that, when a minor plaintiff alleged that she was sexually abused by another minor student, such allegations "fit squarely within the [sexual abuse] exception[.]" Doe by Brown v. Harrisburg Sch. Dist., 1:19-CV-1027, 2020 WL 4584372, at *5 (M.D. Pa. Aug. 10, 2020).[11]  More recently, Judge Brann construed Section 8542(b)(9) to preclude vicarious liability claims against a school district when the school district employees were not named as defendants and a high-school student/baseball player alleged he was sexually assaulted by a teammate in a hotel room while the team travelled to a national baseball tournament.  Doe v. Williamsport Area Sch. Dist. 4:22-CV-01387, --- F. Supp. 3d ----, 2023 WL 6929316, at *14 (M.D. Pa. Oct. 19, 2023).[12]  In the Western District of Pennsylvania, Judge Colville determined that the sexual assault exception applied to negligence claims asserted against a school district and two high school wrestling coaches where the plaintiff alleged he was sodomized and experienced other instances of extreme hazing while students were left unsupervised before practice.  J.R. by & through Mr. R.R. v. Greater

---

[11] Judge Conner noted: "The intended purpose of this amendment to the PSTCA was to 'waive sovereign immunity for public entities guilty of covering up childhood sexual abuse.'" 2020 WL 4584372 at *5 (quoting PA. H.R. LEGIS. JOURNAL, 203rd Assy., Reg. Sess., at 510 (Apr. 10, 2019)(Rozzi, Rep.)).

[12] Judge Brann also determined that the Tort Claims Act did not bar the plaintiff's negligence, negligent infliction of emotional distress, and negligent failure to rescue claims asserted against the school district to the extent that the plaintiff alleged that the school district's negligence caused the sexual abuse.  2023 WL 6929316 at *16.

Latrobe Sch. Dist., 2:21-CV-01088-RJC, --- F. Supp. 3d ----, 2023 WL 5510395, at *11, *16 (W.D. Pa. Aug. 25, 2023).

Returning to the dispute in this matter, defendants argue that the abuse must be committed by a school district employee for the sexual abuse exception to apply based on the language of the statute. (Doc. 16, Br. in Supp., p. 35; Doc. 28, Rep. Br., p. 17). The court concludes, however, that Section 8542(b)(9) does not limit the sexual abuse exception solely to sexual abuse committed by local agency employees. For Section 8542(b)(9) to apply, "conduct" must "constitute an offense" under Section 5551(7), that is an enumerated sex offense. The plain language of the statute does not specify a category of applicable persons committing that conduct or exclude certain categories of persons. Section 8542(b)(9) also contemplates that "conduct" constituting a sex offense against a minor can be separate from the negligence of the local agency.

Moreover, the General Assembly's use of the word "omissions" in Section 8542(b)(9) undermines defendant's arguments that immunity is only waived for sex offenses committed by school district employees. A local agency employee cannot directly engage in conduct constituting a sex offense against a minor through an omission. Rather, as contemplated by this exception, a local agency employee can cause injury to a minor plaintiff through an omission where it fails to act in response to conduct constituting a sex offense. A plaintiff must merely

demonstrate that the local agency's alleged acts or omissions were the proximate cause of the sexual assault.  See J.R., 2023 WL 5510395, at *11.

Next, Defendant Hanover Area argues that the conduct alleged by plaintiff does not fall into the enumerated sex offenses set forth at Section 5551(7) for the sexual abuse exception.  For similar reasons set forth above in Section 1a, the court disagrees.  Section 5551(7) enumerates nine (9) offenses that abrogate a local agency's tort claim immunity when the victim is under eighteen (18) years of age, including IDSI[13] under 18 PA. CONS. STAT. § 3123, sexual assault[14] under 18 PA. CONS. STAT. § 3124.1, and aggravated indecent assault[15] under 18 PA. CONS. STAT. § 3125.  18 PA. CONS. STAT. § 5551(7).  By alleging that one of the boys grabbed and separated D.S.'s buttocks and began shoving mulch in her rectum while another boy sat on her back, plaintiff has adequately alleged the conduct meeting the elements of these offenses and required by Section 8542(b)(9) for

---

[13] IDSI is defined in Section 1a of this memorandum.

[14] A person commits sexual assault in Pennsylvania "when that person engages in. . . deviate sexual intercourse with a complainant without the complainant's consent."  18 PA. CONS. STAT. § 3124.1.  As noted earlier in the memorandum "deviate sexual intercourse" is defined by the Crimes Code, in relevant part as "[s]exual intercourse per os or per anus between human beings. . .The term also includes penetration, however slight, of the genitals or anus of another person with a foreign object for any purpose other than good faith medical, hygienic or law enforcement procedures." 18 PA. CONS. STAT. § 3101.

[15] A person commits aggravated indecent assault in Pennsylvania when that person "engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault if: . . . (7) the complainant is less than 13 years of age[.]"  18 Pa.C.S.A. § 3125(a)(7)

the sexual abuse exception to apply. Defendants also argue that convictions are not required by the statute for the exception to apply. The statute, however, only requires "conduct," not convictions. Accordingly, plaintiff's negligence claim against Defendant Hanover Area may proceed and the motion to dismiss this claim will be denied.

### b. Defendants Ramagli and Farrell

Defendants additionally argue that Defendants Ramagli and Farrell are immune from tort claims to the same extent as Defendant Hanover Area under the PSTCA. Having concluded above that the sexual abuse exception to immunity applies in this matter to the negligence claims against the school district, this immunity argument likewise falls short where plaintiff has averred that Defendant Ramagli and Farrell were acting in the scope of their duties when D.S. was assaulted. See 42 PA. CONS. STAT. § 8545 ("An employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter.").[16]

---

[16] Based on this conclusion, the court need not address defendants' argument that plaintiff must plead that an employee caused the injury and their act "constituted a crime, actual fraud, actual malice or willful misconduct," for her tort claims to proceed. See Palmer v. Bartosh, 959 A.2d 508, 512& n. 3 (Pa. Commw. Ct. 2008)(explaining the interplay of 42 PA. CONS. STAT. §§ 8542(b), 8545, and 8550); see also Doe by Brown, 2020 WL 4584372 at *6 (dismissing intentional tort claims against a principal, superintendent, teacher, and janitor where willful

Defendants also argue that Ramagli and Farrell enjoy common law public official immunity. Under Pennsylvania law, high public officials enjoy absolute immunity from suits seeking damages for actions taken or statements made in the course of their official duties and within the scope of their authority. See Doe v. Franklin Cnty., 174 A.3d 593, 603 (Pa. 2017). Durham v. McElynn, 165, 772 A.2d 68, 69 (Pa. 2001). Defendants concede that teachers are not high public officials. (See Doc. 16, Br. in Supp, p. 41). They argue, however, that Ramagli and Farrell are entitled to common law conditional immunity.[17] (Id., p. 41-42)(quoting Forney v. Harrisburg State Hosp., 336 A.2d 709, 12 (Pa. Commw. Ct. 1975)). Plaintiff counters that the cases cited by defendants predate the enactment of the sexual abuse exception in the PSTCA.

The court agrees that Forney is too aged to be applicable; it predates the PSTCA and a decision by the Pennsylvania Supreme Court modifying the common law doctrine of official immunity, DuBree v. Commonwealth, 393 A.2d 293 (1978).[18] Moreover, the principles of common law official immunity are not

_____

misconduct was alleged against the employees but denying the motion to dismiss the negligence claims against the employees because the sexual abuse exception was found to apply to the school district).

[17] Decisions from several decades ago refer to common law conditional immunity as "low" public official immunity. Fischer v. Kassab, 380 A.2d 926, 927 (Pa. Commw. Ct. 1977).

[18] Forney was decided during an era where common law immunities were replaced by statutory immunities. See Ayala v. Phila. Bd of Pub. Educ., 305 A.2d 877 (Pa. 1973)(abrogating common law governmental immunity); Mayle v. Pa. Dept. of Highways, 388

applicable to Defendants Ramagli and Farrell if they did not play any role in policy-making functions. See Reese v. Danforth, 406 A.2d 735, 737 (Pa. 1979) (explaining that pre-DuBree "a mere public employee having no policy-making functions was not entitled to [a]ny immunity, whether it was absolute or conditional.").

Accordingly, even if the statutory waiver of immunity was inapplicable, Ramagli and Farrell do not appear to enjoy any common law official immunity under the facts of the complaint and the motion to dismiss plaintiff's negligence claims against them will be denied.

### 4. Plaintiff's Section 1983 Equal Protection Claim

Moving on to plaintiff's Section 1983 claims, Count Four of plaintiff's complaint alleges that Defendants Hanover Area, Barrett, and Pugh violated the Equal Protection Clause based on their post-assault responses in allegedly subjecting D.S., a girl, to significantly harsher and discriminatory treatment than the boys who assaulted her.[19]  (Doc. 1, Complaint, ¶ 64).  Plaintiff also alleges

---

A.2d 709 (Pa. 1978)(abrogating common law sovereign immunity); DuBree v. Commonwealth, 393 A.2d 293 (Pa. 1978)(abrogating a blanket rule for common law official immunity); Brungard v. Hartman, 394 A.2d 1265 (1978) (reaffirming the principles in DuBree); Act 152 of 1978, P.L 788 (Sept. 28, 1978)(enacting statutory sovereign immunity now found at 42 PA. CONS. STAT. § 8521, et seq.); Act 330 of 1978, P.L. 1399 (Nov. 26, 1978)(enacting statutory governmental immunity now found at 42 PA. CONS. STAT. § 8541, et seq.).

[19] Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials.  The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law.  See Gonzaga Univ. v. Doe, 536 U.S.

that Barrett and Pugh acted with deliberate indifference to the report of sexual

assault and to the hostile educational environment created by the lack of

meaningful corrective action after the playground incident. (Id. ¶ 65).

Plaintiff's Section 1983 Equal Protection claims largely mimic her Title IX

claims.  In a unanimous decision authored by Justice Alito, the Supreme Court

endorsed concurrent actions against a school district under both Title IX and

Section 1983 for peer-on-peer sexual harassment to redress unconstitutional

sex-based discrimination in schools.  Fitzgerald v. Barnstable Sch. Comm., 555

U.S. 246, 249, 251, 257–58 (2009).  But the Court recognized that Title IX and

Section 1983 claims differ in some respects:

> Even where particular activities and particular defendants
> are subject to both Title IX and the Equal Protection
> Clause, the standards for establishing liability may not be
> wholly congruent. For example, a Title IX plaintiff can
> establish school district liability by showing that a single
> school administrator with authority to take corrective action
> responded to harassment with deliberate indifference.
> Gebser v. Lago Vista Independent School Dist., 524 U.S.
> 274, 290, 118 S. Ct. 1989, 141 L. Ed. 2d 277 (1998). A
> plaintiff stating a similar claim via § 1983 for violation of the
> Equal Protection Clause by a school district or other
> municipal entity must show that the harassment was the
> result of municipal custom, policy, or practice. Monell v.
> New York City Dept. of Social Servs., 436 U.S. 658, 694,
> 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

---

273, 284–85 (2002).  To establish a claim under Section 1983, two criteria must be met. First,
the conduct complained of must have been committed by a person acting under color of state
law. Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 590 (3d Cir. 1998). Second, the
conduct must deprive the plaintiff of rights secured under the Constitution or federal law. Id.

Id. at 257–58.

Thus, under Section 1983, plaintiff must establish that her harassment arose from a municipal custom, policy, or practice.  Regarding this requirement to establish liability against Hanover Area for Equal Protection Clause violations, plaintiff alleges that Defendants Barrett and Pugh possessed authority to create and enforce Hanover Area's policies and customs and Barrett, as district superintendent, "conducted and condoned" the "unequal protection and treatment of D.S." (Doc. 1, Complaint, ¶¶ 66, 67).  In considering the claims against Hanover Area, the court will first address defendants' arguments about Barrett and Pugh's final decision-making authority before discussing their arguments about the substantive elements of plaintiffs' Equal Protection claims. The court will then consider Barrett and Pugh's qualified immunity arguments.

### a. Final Policymaking Authority of Barrett and Pugh

Plaintiff brings a Section 1983 claim against Hanover Area, a school district and municipal subunit in the Commonwealth of Pennsylvania. See 53 PA. STAT. § 7101 (defining "municipality" to include school districts).  As noted above, such claims proceed pursuant to Monell and subsequent case law clarifying the boundaries of municipal liability. See 436 U.S. at 690.

Local governments may not be sued under Section 1983 for injuries solely inflicted by its employees; rather, the injuries must be inflicted by execution of a

government's policy or custom by lawmakers or by "those whose edicts or acts may fairly be said to represent official policy." Id. at 694.  "[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Id. at 691.

      "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. 51, 61 (2011)(citations omitted).  A policy need not be passed by a legislative body, or even be in writing, to constitute an official policy; a pertinent decision by an official with decision-making authority on the subject constitutes an official policy.  Porter v. City of Philadelphia, 975 F.3d 374, 383 (3d Cir. 2020)(citing Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986)) . Moreover, "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances[,]" but liability only attaches "where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Pembaur, 475 U.S. at 480-81 (footnote omitted).  An official has final policymaking authority if "as a matter of state law, the official is responsible for making policy in the particular area of municipal business in question" and if "the official's authority to make policy in that area is final and unreviewable." Hill v. Borough of Kutztown, 455 F.3d 225, 245 (3d Cir. 2006) (internal citations omitted) (emphasis removed). "Proving that a municipal

38

official is a final policymaking authority is a fundamental element" of a Section 1983 action.  LaVerdure v. Cnty. of Montgomery, 324 F.3d 123, 126 (3d Cir. 2003).

Defendants argue that Barrett and Pugh are not final decision-makers but rather "administrative employees" and "messengers." (Doc. 16, Br. in Supp., pp. 46, 56).  As noted above, Barrett serves as superintendent for the district and Pugh is alleged to be the director of the prekindergarten.  In considering the alleged decisions made by Barrett and Pugh regarding D.S., the court construes the allegations in plaintiff's complaint to include unequal classroom placement determinations following an alleged sexual assault.  A discussion of state law regarding school boards, superintendents, and prekindergarten programming follows.

Pennsylvania's Public School Code of 1949 ("School Code"), 24 PA. STAT. §1-101, *et seq.* and its attendant regulatory scheme governs the hierarchy of public school administration in the Commonwealth.  Generally, "the public school system of the Commonwealth shall be administered by a board of school directors[.]" 24 PA. STAT. § 3-301.  Under the School Code, a majority vote of a school board is required to take certain actions on various matters.[20]  24 PA.

---

[20] Those matters include: "Fixing length of school term. Adopting textbooks. Appointing or dismissing district superintendents, assistant district superintendents, associate superintendents, principals, and teachers. Appointing tax collectors and other appointees.

STAT. § 5-508.  Regarding student safety, school boards are authorized by

statute to:

> adopt and enforce such reasonable rules and regulations
> as it may deem necessary and proper, regarding the
> management of its school affairs and the. . .conduct and
> deportment of all pupils attending the public schools in the
> district, during such time as they are under the supervision
> of the board of school directors and teachers, including the
> time necessarily spent in coming to and returning from
> school.

24 PA. STAT. § 5-510.

The School Code also establishes the role of district superintendents for

"superintendence and supervision of the public schools of this Commonwealth."

24 PA. STAT. § 10-1001.  District superintendents shall "visit personally as often

as practicable the several schools under his supervision," to: 1) "note the courses

and methods of instruction and branches taught[;]" 2) "to give such directions in

the art and methods of teaching in each school as he deems expedient and

necessary[;]" and 3) "to report to the board of school directors any insufficiency

---

Adopting the annual budget. Levying and assessing taxes. Purchasing, selling, or condemning land. Locating new buildings or changing the locations of old ones. Dismissing a teacher after a hearing. Creating or increasing any indebtedness. Adopting courses of study. Establishing additional schools or departments. Designating depositories for school funds. Entering into contracts of any kind, including contracts for the purchase of fuel or any supplies, where the amount involved exceeds one hundred dollars ($ 100). Fixing salaries or compensation of officers, teachers, or other appointees of the board of school directors. Entering into contracts with and making appropriations to the intermediate unit for the district's proportionate share of the cost of services provided or to be provided for by the intermediate unit."  24 PA. STAT. § 5-508 (formatting modified).

found," so that "each school shall be equal to the grade for which it was established and that there may be, as far as practicable, uniformity in the courses of study in the schools of the several grades." 24 PA. STAT. §1-1081.  In accordance with the School Code, superintendents also perform "such other duties as may be required by the board of school directors." Id.  Consequently, "[u]nder Pennsylvania law, a school board may be the final policymaker with respect to some actions, while the school superintendent may be the final policymaker with regard to other actions." See G.S. v. Penn-Trafford Sch. Dist., 20-3281, 2023 WL 4486667, at *3 & n. 29 (3d Cir. July 12, 2023)(non-precedential)(citing McGreevy v. Stroup, 413 F.3d 359, 368–69 (3d Cir. 2005)); see also E.N. v. Susquehanna Twp. Sch. Dist., No. 1:09-CV-1727, 2011 WL 3608544, at *8 (M.D. Pa. July 5, 2011), report and recommendation adopted, No. 1:09-CV-1727, 2011 WL 3608490 (M.D. Pa. Aug. 16, 2011)("The final policy maker for a school district in Pennsylvania is typically the school board or the superintendent.").

By law, district superintendents are also duty-bound "to see that in every district there shall be taught the several branches [of study] required by [the School Code], as well as such other branches as the board of school directors may require." 24 PA. STAT. § 10-1005.  The branch of study in this case involves prekindergarten.  "Prekindergarten programs may be offered to all 3 and 4 year

olds or may be targeted to children who are most in need of prekindergarten services who reside in the district." 22 PA. CODE § 4.20. "Targeted programs may serve children who are at risk of school failure because of limited English proficiency, community factors, economic disadvantage, but may not exclude or be limited exclusively to children with disabilities." Id.  Not every school district in Pennsylvania offers a prekindergarten program, however, and state law makes attendance optional. See 22 PA. CODE § 4.20 ("School districts are not required to offer a prekindergarten program, and parents are not required to enroll their children in those programs if offered."); see also 24 PA. STAT. §§ 13-1326, 13-1327 (setting compulsory school attendance requirements for children beginning at six (6) years of age).

Plaintiff alleges that D.S. attended a Pre-K Counts program. (Doc. 1, Complaint ¶¶ 4, 7).  The Commonwealth has established the Pennsylvania Pre-K Counts Program "as a competitive grant program to expand pre-kindergarten opportunities for eligible students[,]" and school districts like Hanover Area are eligible providers.  24 PA. STAT. §§ 15-1511-D; 15-1512-D.  Funding is allocated on a per-student basis. 24 PA. STAT. §§ 15-1514-D.  When approved as a provider under Pre-K Counts, school districts must "[p]erform all other duties pursuant to applicable regulations and standards." 24 PA. STAT. § 15-1515-D. And there are many regulations regarding Pre-K Counts programs.  See 22 PA.

CODE §§ 405.1-405.73.  Relevant here, program class enrollments are capped at twenty (20) students and each class must be served by at least one teacher and one aide. 22 PA. CODE. § 405.43(a).  Whenever class enrollment exceeds twenty (20) students, state regulations require that a prekindergarten class be divided into two classes with proper staffing. 22 PA. CODE § 405.43(c).  Additionally, Pre-K Counts programs "should not contain more than 20% of students who have been identified by the start of the program year as having a developmental delay or disability[,]" but at the same time, "approved providers may not deny students admission to a classroom based on their disability or delay." 22 PA. CODE § 405.51.

Returning to the question of whether Barrett and Pugh possessed final decision-making authority regarding prekindergarten classroom placement following an alleged sexual assault, the school board "enjoys the discretion to assign students to particular schools **within a district**." Archer v. York City Sch. Dist., No. 1:13-CV-2826, 2014 WL 12884086, at *12 (M.D. Pa. Feb. 27, 2014)(emphasis added)(citing 24 PA. STAT. § 13-1310(a))(directing, *inter alia*, that a board of school directors "may classify and assign the pupils in the district to any school or schools therein as it may deem best, in order to properly educate them")(further citations omitted).  The School Code is less clear about

the assignment of students to individual classrooms within a school.[21]

Classroom placement thus appears to be a matter of local policy under

Pennsylvania law.

Under the School Code, school boards are required to post regulations on

a publicly accessible Internet website relative to "admission of beginners[,]"

"attendance, excusals and truancy[,]" "withdrawal from school[,]" "student

discipline[,]" and "suspension and expulsion of students[,]" among many other

topics. 24 PA. STAT. § 5-510.2.  Despite not being extensively discussed by the

parties in their briefs, the court is empowered to consider Hanover Area's policies

on a motion to dismiss since these policies are subject to judicial notice. See

Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Miller v.

Goggin, 672 F. Supp. 3d 14, 26 & n. 4 (E.D. Pa. 2023)(taking judicial notice of

school board policies on a motion to dismiss).

Regarding prekindergarten and classroom placement, Hanover Area

maintains two relevant policies.  The first involves prekindergarten education

generally and responsibilities are delegated to the superintendent under that

policy:

---

[21] Article XIII of the School Code contains a specific provision about classroom placement of
twins and higher order multiples, See 24 PA. STAT. § 13-1310.1, but is otherwise silent
regarding general classroom placement of students.  For twins and higher order multiples, a
building principal is afforded authority to override the decision of a parent regarding classroom
placement after consultation with the superintendent. Id.

**Prekindergarten Education**
When offering or contracting with a community agency to offer a prekindergarten program, the district shall develop an implementation plan that meets the requirements of law and regulations. The plan shall be submitted to the Department of Education in the initial year and every three (3) years, or when the plan is amended, whichever is sooner. Prior to approval by the Board and submission to the Department of Education, the district shall make the prekindergarten implementation plan available for public inspection and comment in the district's administrative offices and the nearest public library for a minimum of twenty-eight (28) days.

**Delegation of Responsibility**
The Superintendent shall be responsible for organizing the comprehensive planning process, ensuring participation in accordance with Board policy and submitting the required plans to the Department of Education.

Hanover Area School Board Policy, § 100 (Comprehensive Planning), adopted June 9, 2010, last revised November 6, 2014 (footnotes omitted).[22]

The second relevant school board policy concerns assignment of students within the district and also delegates responsibility to the superintendent and others:

**Purpose**
The Board directs that the assignment of students to classes and schools within this district shall be consistent with the educational needs and abilities of students and the best use of district resources.

---

[22] Hanover Area's policies are posted at: https://go.boarddocs.com/pa/hano/Board.nsf/Public#, last accessed May 6, 2024.

**Authority**
The Board shall determine periodically the school attendance areas of the district, and the students within each area are expected to attend the designated school. In assigning students to schools within this district, no discrimination shall occur.

**Delegation of Responsibility**
. . .
The Superintendent or designee may assign a student to a school other than the one designated for the attendance area when such exception is justified by circumstances and is in the educational interest of the student.

The Superintendent or designee shall assign incoming transfer students to schools, grades, and classes that afford each student the greatest likelihood of realizing his/her educational and academic goals.

The building principal shall assign students in the school to appropriate grades, classes or groups, based on consideration of the needs and abilities of the student, as well as the educational program and administration of the school.

Hanover Area School Board Policy, § 206 (Assignment Within District), adopted June 9, 2010 (footnotes omitted).

Based on Hanover Area's policies, the school board delegated decision-making about placement of students to the superintendent or a designee or a building principal. [23]  And to the extent that Pugh was Barrett's subordinate, a

---

[23] Plaintiff alleges that Pugh possessed final policymaking authority as the director of the prekindergarten program. Because the decisions could be delegated to a "designee" under Hanover Area policy, these allegations meet the plausibility standard on a motion to dismiss. As noted above, funding for Pre-K Counts is on a per student basis and is tied to compliance with state law and regulations. 24 PA. STAT. §§ 15-510.2-D, 15-1514-D, 15-1515-D, 15-1516-D, 15-1517-D.  Public preschool programs also may be federally funded through Title I, Part A

46

municipality can be liable for an isolated constitutional violation if a final

policymaker ratified a subordinate's actions.  See City of St. Louis v. Praprotnik,

485 U.S. 112, 127 (1988).  Accordingly, the court rejects defendants' arguments

that Barrett and Pugh did not possess authority to establish Section 1983 liability

against Hanover Area in this case based on plaintiff's allegations.

### b. Whether Plaintiff Has Alleged Disparate Treatment or a Hostile Educational Environment

With final policy-making authority addressed, the court turns next to

defendants' arguments about the substance of plaintiff's Equal Protection claims.

Plaintiff advances two theories of liability in the complaint, disparate treatment

and hostile educational environment.  (Doc. 1, Complaint, ¶¶ 64-65).

### i.     Disparate Treatment

The Equal Protection Clause of the Fourteenth Amendment provides that

no State shall "deny to any person within its jurisdiction the equal protection of

the laws." U.S. CONST. amend. XIV, § 2.  The Equal Protection Clause "is

essentially a direction that all persons similarly situated should be treated alike."

---

("Title I") of the Elementary and Secondary Education Act, reauthorized by the Every Student Succeeds Act ("ESSA"), 20 U.S.C. § 6301 *et seq.*  See 20 U.S.C. § 6312(1)(A) (requiring a local educational agency to file a plan with the state educational agency developed after consultation with parents to receive grant funding); 20 U.S.C. § 6314(c) (permitting use of Title I funds to "establish or enhance" preschool programs).  It is thus plausible that Pugh was designated as the final decision-maker as the director of prekindergarten at Hanover Area due to the various state and federal requirements tied to funding that program.

City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).

Accordingly, to bring a successful claim under Section 1983 for denial of equal

protection based on gender, a plaintiff must prove: 1) the existence of purposeful

discrimination; 2) different treatment from that received by other individuals

similarly situated; and 3) that such different treatment was based upon gender.

Andrews, 895 F.2d at 1478 (citations omitted).

"Persons are similarly situated under the Equal Protection Clause when

they are alike in all relevant aspects."  Blunt v. Lower Merion Sch. Dist., 767 F.3d

247, 273 (3d Cir. 2014)(citing Startzell v. City of Phila., 533 F.3d 183, 203 (3d

Cir. 2008; Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005)(internal

quotation marks omitted)).  Moreover, a plaintiff must allege more than broad

generalities in identifying comparators. Stradford v. Sec'y Pennsylvania Dep't of

Corr., 53 F.4th 67, 74 (3d Cir. 2022)(citations omitted).

Defendants challenge allegations that D.S. received different treatment

from the boys in her preschool class and argue that the boys are not appropriate

comparators.  The court must disagree with that assessment at this stage.  As

alleged, Pugh and Barrett received a report from plaintiff that D.S., a female, was

sexually assaulted on her school playground by two male classmates.  Plaintiff

also alleges that Pugh and Barrett then intentionally treated D.S. differently from

the boys in addressing their education after the event, that is, they prioritized one

48

or both boys remaining in the same preschool classroom versus D.S. remaining in the same classroom.  The boys thus continued with school uninterrupted while D.S.'s learning progress was disturbed.  After consideration of the allegations, plaintiff has successfully pled that she received intentional disparate treatment based on sex and sufficiently identified comparators for discovery purposes.  The motion to dismiss will be denied.

### ii.    Hostile Educational Environment

Plaintiff also asserts a hostile educational environment claim under Section 1983.  Hostile educational environment claims proceed borrowing the elements of Title IX claims, see Goodwin v. Pennridge Sch. Dist., 389 F. Supp. 3d 304, 319 (E.D. Pa. 2019), and standards from hostile work environment claims litigated under Title VII of the Civil Rights Act of 1964, see Goodwin 389 F. Supp. 3d at 315 (citing Doe by & through Doe v. Boyertown Area Sch. Dist., 897 F.3d 518, 533 n.99 (3d Cir. 2018); see also Young v. Pleasant Valley Sch. Dist., No. 3:07-CV-854, 2010 WL 55711(M.D. Pa. Jan. 4, 2010)(Munley, James, J.); 2012 WL 1827194 (M.D. Pa. May 18, 2012)(Kane, J.); 956 F. Supp. 2d 589, 598 (M.D. Pa. 2013)(Brann, J.), aff'd in part, vacated and remanded in part, 601 F. App'x 132 (3d Cir. 2015).

As discussed above, plaintiff has pled *prima facie* Title IX claims against Hanover Area, including that the assault was so severe and the response was so

deficient that it deprived D.S. of access to school opportunities.  She has also

plausibly set forth that Barrett and Pugh had the requisite authority to make the

district liable under Section 1983 for their decisions.  Plaintiff alleges that Barrett

and Pugh: 1) did not treat the playground incident as a sexual assault; 2) did not

report the incident to child protective authorities as required; and 3) did not take

the requisite actions mandated by Title IX after the incident.  Per plaintiff, these

actions and inactions created a hostile school environment that constructively

expelled D.S. from the prekindergarten program.  A single incident of sufficient

severity can create a hostile environment.  Castleberry v. STI Grp., 863 F.3d 259,

264 (3d Cir. 2017)(citing Faragher v. City of Boca Raton, 524 U.S. 775, 788

(1998) and Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 270 (2001)).

Furthermore, the resolution of hostile environment questions is context-specific.

Id.  The court thus finds that the complaint states a Section 1983 claim under a

hostile educational environment theory and will deny defendants' motion to

dismiss.

### c. Qualified Immunity of Barrett and Pugh

Plaintiff also asserts Section 1983 Equal Protection violations by Barrett

and Pugh for acting with deliberate indifference to known student-on-student

sexual harassment/sexual assault, treating D.S. significantly harsher following

the assault, and failing to take meaningful corrective action to allow for D.S. to

enjoy equal educational opportunities in a non-hostile environment. (See Doc. 1, Complaint ¶¶ 63-65).

Barrett and Pugh assert that they are entitled to qualified immunity in this action.  The doctrine of qualified immunity may shield public school officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

The two-part test to determine whether government officials should receive qualified immunity is well settled. Montemuro v. Jim Thorpe Area Sch. Dist., No. 22-1866, --- F.4th ----, 2024 WL 1899031, at *2 (3d Cir. May 1, 2024)(citing Anglemeyer v. Ammons, 92 F.4th 184, 188 (3d Cir. 2024)).  The court asks: 1) "whether the plaintiff has alleged the violation of any constitutional or statutory rights," and 2) "whether those rights were clearly established at the time of the challenged conduct, such that a reasonable official would have known that the conduct violated the plaintiff's rights." Id.  The defendants bear the burden of establishing that they enjoy qualified immunity. Burns v. PA Dep't of Corr., 642 F.3d 163, 176 (3d Cir. 2011)(citing Harlow, 457 U.S. at 819).  In considering qualified immunity on a motion to dismiss, the court may address the prongs of

the qualified immunity test in any order. See Pearson v. Callahan, 555 U.S. 223, 236 (2009).

The court has already determined that plaintiff successfully alleged violations of D.S.'s statutory and constitutional rights. Thus, the court is left to determine whether the rights at issue were clearly established in November 2021. The Supreme Court has explained that: "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Mullenix v. Luna, 577 U.S. 7, 11 (2015) (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)). "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be settled law. . .which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." District of Columbia v. Wesby, 583 U.S. 48, 63, (2018)(citations and internal quotations omitted). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.' " Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)(quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

The salient question to ask when presented with a qualified immunity defense is whether the state of the law at the time of the alleged incident gave

the defendants fair warning that their alleged treatment of D.S. was unconstitutional. See Hope v. Pelzer, 536 U.S. 730, 741 (2002). The court next considers the "state of the law," i.e. the constitutional and statutory contours of D.S.'s rights, to determine whether they were sufficiently clear to the extent that every reasonable school official would have understood that they were violating her rights through their actions. In conducting the below analysis, the court defines D.S.'s Equal Protection right from the complaint as follows: the right to be free from the deliberate indifference of school officials to reports of student-on-student sexual harassment/sexual assault.

In determining whether D.S.'s right was "clearly established" at the time her mother reported the alleged sexual assault, the court must first look "to factually analogous Supreme Court precedent, as well as binding opinions from [the Third Circuit Court of Appeals.]" Jefferson v. Lias, 21 F.4th 74, 81 (3d Cir. 2021) (quoting Peroza-Benitez v. Smith, 994 F.3d 157, 165 (3d Cir. 2021)(further citation omitted). The United States Supreme Court and the Third Circuit Court of Appeals, however, have not addressed whether the Equal Protection Clause protects students from a school's deliberate indifference to student-on-student harassment. See Williams v. Jersey Shore Area Sch. Dist., 673 F. Supp. 3d 688, 700 (M.D. Pa. 2023)("Williams I")(citations omitted). If there is no applicable binding precedent to review, the court may look to other United States Courts of

Appeals to determine whether there is a "robust consensus of cases of persuasive authority," in the Courts of Appeals which could clearly establish a right for the purposes of qualified immunity. See L.R. v. Sch. Dist. of Philadelphia, 836 F.3d 235, 248 (3d Cir. 2016)(citing Mammaro v. N.J. Div. of Child Prot. & Permanency, 814 F.3d 164, 169 (3d Cir. 2016); Taylor v. Barkes, 575 U.S. 822, 826 (2015)(per curiam)).

As of November 2021, the Fourth, Sixth, Seventh, Ninth, Tenth, and Eleventh Circuits had held that an individual may be held liable under the Equal Protection Clause for deliberate indifference to student-on-student sexual harassment.  Williams v. Jersey Shore Area Sch. Dist., No. 4:22-CV-00473, 2023 WL 8703402, at *6 & nn. 75-80 (M.D. Pa. Dec. 15, 2023)(Brann, C.J.)("Williams II")(citing Feminist Majority Foundation v. Hurley, 911 F.3d 674, 702 (4th Cir. 2018); Stiles ex rel. D.S. v. Grainger Cty., 819 F.3d 834, 851-52 (6th Cir. 2016); Nabozny v. Podlesny, 92 F.3d 446 (7th Cir. 1996); Flores v. Morgan Hill Unified Sch. Dist., 324 F.3d 1130 (9th Cir. 2003); Murrell v. Sch. Dist. No. 1, Denver, 186 F.3d 1238, 1250 (10th Cir. 1999); Hill v. Cundiff, 797 F.3d 948, 978 (11th Cir. 2015)).  Six Courts of Appeals thus have directly acknowledged the right claimed by plaintiff on behalf of D.S.  Accordingly, the court finds a robust consensus of persuasive authority exists regarding the right to be free from the deliberate indifference of school officials to reports of student-on-student sexual

harassment.  Barrett and Pugh's qualified immunity arguments are rejected based on D.S.'s right being clearly established at the time of their alleged deliberate indifference following a sexual assault.

### 5.  Plaintiff's Section 1983 Failure to Train Claim

Finally, Count Five of plaintiff's complaint asserts a Section 1983 failure to train claim against Hanover Area.  Plaintiff alleges that Hanover Area failed to train Barrett and Pugh regarding Title IX and Hanover Area's policies about Title IX's requirements. (Doc. 1, Complaint, ¶¶ 72-73).  Specifically, plaintiff identifies that, if training had been adequate, Barrett and Pugh would have: 1) acknowledged the incident as sexual in nature and investigated the incident as a sexual assault, see 34 C.F.R. §§ 106.30 (2020) (definition of "sexual assault"), 106.45(b)(3),(5) (2020) (investigation of a complaint); 2) notified and turned the matter over to Hanover Area's Title IX coordinator, see 34 C.F.R. §§106.30 (2020) (definition of actual knowledge), 106.44(a) (recipient's response to sexual harassment); 3) reported the incident to child protective services authorities as required by Pennsylvania law[24], see 23 PA. CONS. STAT. §§ 6303, 6311, 6313,

---

[24] Defendants use the motion to dismiss to advance an argument that child abuse reporting was not necessary under Pennsylvania law because the boys were under fourteen (14) years of age. (Doc. 16 at pp. 65-66, fn. 24).  The CPSL defines perpetrators, in part, based on whether their actions or failures to act led to child abuse. "A person 18 years of age or older and responsible for the child's welfare[,]" is defined as a "perpetrator" for failing to act. 23 PA. CONS. STAT. § 6303.  The Court also notes that the School Code provides teachers with the same right to exercise authority over a student as a parent or guardian. 24 PA. STAT. § 13-1317.  To the extent relevant to establish any of plaintiff's claims, the question of whether the

6319; 4) ensured that the Title IX coordinator contacted D.S.'s parents to inform them of their rights under Title IX regarding supportive measures, <u>see</u> 34 C.F.R. §§ 106.30 (2020) (definition of supportive measures) 106.44(a)(2020) (recipient's response to sexual harassment); 5) informed D.S.'s parents of any determination, including any disciplinary sanctions on those accused of sexual assault, <u>see</u> 34 C.F.R. § 106.46(b)(7) (2020); and 6) taken corrective action to remedy the hostile environment, <u>see</u> 34 C.F.R. § 106.44(a) (2020). (Doc. 1, Complaint, ¶ 72(a)-(f); Doc. 23, Br. in Opp., pp. 60-61).  As alleged, this failure to train constituted deliberate indifference and acquiescence to D.S.'s sexual assault in violation of D.S.'s Fourteenth Amendment rights to due process and equal protection. (Doc. 1, Complaint, ¶¶ 71, 74-76).

Defendants argue that, for the failure to train claim to succeed, Hanover Area required notice of a need to train from other incidents, which is not alleged in the complaint. (Doc. 16, pp. 63-64). In her brief in opposition, however, plaintiff identifies Hanover Area's formal Title IX policy and argues that her allegations set forth a complete failure to follow to federal regulations and local policy. (Doc. 23 at 62-63 (citing Hanover Area School Board Policy, § 103 (Discrimination/Title IX Sexual Harassment Affecting Students), adopted June 9, 2010, last revised

CPSL obligated the reporting of Hanover Area employees for their failure to protect D.S. on the playground is a one for another day.

March 2, 2021)).  Plaintiff contends that her allegations show a paper policy with no attendant training, which amounts to the necessary deliberate indifference necessary to support a Section 1983 claim.  Furthermore, plaintiff argues that she has sufficiently alleged the requisite causal nexus between the failure to train and D.S.'s injuries from this single incident.

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick, 563 U.S. at 62 (quoting Board of Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403 (1997)).  But Supreme Court precedent leaves open the "possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a [municipality] could be liable under § 1983 without proof of a pre-existing pattern of violations." Id. at 64 (discussing Bryan Cnty., 520 U.S. at 390, n. 10, 409; City of Canton v. Harris, 489 U.S. 378 (1989)). "Liability in single-incident cases depends on '[t]he likelihood that the situation will recur and the predictability that an [employee] lacking specific tools to handle that situation will violate citizens' rights.' " Thomas v. Cumberland Cnty., 749 F.3d 217, 223–24 (3d Cir. 2014) (quoting Bryan Cnty., 520 U.S. at 409)).  A single-incident-based failure to train claim against a school district survives a motion to dismiss where a plaintiff alleges that a school enacted a policy conveying its awareness of the consequences of not following

the policy, failed to train employees on that policy, and a child sustained a constitutional injury from that failure to train. See L.R., 60 F. Supp. 3d at 599-601.

Here, plaintiff has not pled facts constituting a pattern-based failure-to-train claim. She has, however, plausibly set forth facts that could support a single-incident failure-to-train claim. As noted above in this memorandum, plaintiff has also pled causation between Hanover Area, Barrett, and Pugh's response to the alleged sexual assault and D.S.'s injury, that is, the boys remained in prekindergarten but D.S. did not because of a deficient plan to ensure D.S.'s safety at school. The motion to dismiss Count Five will thus be denied.[25]

**Conclusion**

For the reasons set forth above, defendants' motion to dismiss is granted in part and denied in part. The motion is granted with respect to plaintiff's claims against Barrett and Pugh in Count One and Count Two for violations of Title IX and those individual claims are dismissed. The motion is also granted regarding plaintiff's claims for punitive damages as asserted in the original complaint. Furthermore, defendants' motion is granted to the extent that plaintiff alleges a substantive due process violation in Count Five and any substantive due process

---

[25] Defendants also moved to dismiss Count Five premised on substantive due process violations. Plaintiff did not counter these arguments in her brief in opposition or otherwise raise a separate claim in this regard. Accordingly, the court will dismiss this portion of the failure to train claim in Count Five without additional discussion.

claim is thus dismissed.  Defendants' motion to dismiss is otherwise denied.  An

appropriate order follows.


**Date:**   **05/23/2024**                    **_s/ Julia K. Munley_**
                                        **JUDGE JULIA K. MUNLEY**
                                        **United States District Court**